**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA        :

        **v.**                  :            **25-cr-203 (JMC)**

JONATHAN RAY               :

## MOTION TO SUPPRESS TANGIBLE EVIDENCE

Mr. Jonathan Ray through undersigned counsel, respectfully moves this Honorable Court to suppress the use as evidence at trial of all tangible objects seized as a result of an unlawful seizure of Mr. Ray on June 26, 2025. The seizure violated of Mr. Ray's rights under the Fourth Amendment to the United States Constitution. An evidentiary hearing on this motion is requested.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 26, 2025, at approximately 2:10 am, the government alleges that a fight broke out in front of the SAX nightclub, in the 700 Block of 11th Street, SW, Washington D.C. The government further alleges "to break up the fight, Officer Othneil Blagrove placed Mr. Ray in handcuffs." As Mr. Ray tried to walk away, Officer Blagrove seized him by grabbing onto his arm and stopping him from walking away. Several witnesses on the scene informed the officers that Mr. Ray, specifically, was <u>not</u> involved in the fight and was only trying to break it up. No complaining witness identified Mr. Ray as having been involved in an assault against them, and no complainant told officers that Mr. Ray was engaged in a criminal offense.

MPD officers on the scene said that "it didn't matter" whether Mr. Ray was trying to break up the fight. However, if Mr. Ray was acting lawfully, or to protect any other person, he was not involved in a crime. Therefore, at the time the officer grabbed Mr. Ray, the officer did

not have a reasonable, articulable suspicion that Mr. Ray was engaged in criminal activity.

In an affidavit filed in support of the initial complaint filed in this matter, a police officer explained the events leading up to the seizure of Mr. Ray as:

> "On June 26, 2025, at approximately 2:10 am, Metropolitan Police Department ("MPD") Officer Miciyah Carter, badge number 4516, ("Your Affiant") was issuing parking violations in the 700 Block of 11th Street SW, Washington D.C. At approximately 2:10 am, Your Affiant saw JONATHAN PIERRE RAY ("RAY") and several other males start to punch each other as they exited the 734 11th ST NW location. MPD units ran to break up the fight. Officer Othneil Blagrove, MPD badge number 4882, placed RAY in handcuffs. Officer Blagrove then recovered a firearm in RAY's underwear and 147 pills, in a clear plastic baggie, in RAY's pocket. ECF 1-1.

The interaction between the officers and Mr. Ray was recorded by the officers' body-worn cameras (BWCs). These videos demonstrate that Officer Blagrove, grabbed Mr. Ray and seized him without reasonable articulable suspicion and searched him without probable cause or any reason to believe he was armed and dangerous.

At no point did the officers see a bulge in Mr. Ray's pants nor did they have probable cause to search his person. Despite having no basis to stop, seize or search Mr. Ray the officers recovered a firearm from inside of the front of Mr. Ray's underwear. MPD officers can offer no legal basis to support the seizure or search of Mr. Ray's person.

On July 17, 2025, a grand jury returned a one-count indictment. Count One charges Mr. Ray with possession of ammunition by a person previously convicted of a crime punishable by a term exceeding one year, in violation of 18 U.S.C. § 922(g).

## ARGUMENT

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Where the government seeks to introduce evidence seized without a warrant, it has the burden of

showing that the evidence falls within one of the "few specifically established and well delineated exceptions" to the warrant requirement of the Fourth Amendment. *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971) ("'[T]he burden is on those seeking the exemption to show the need for it.'"); *Katz v. United States*, 389 U.S. 347, 357 (1967) (holding that the warrant requirement subject only to a "few specifically established and well-delineated exceptions"); *Rouse v. United States*, 359 F.2d 1014, 1016 (D.C. Cir. 1966) ("[T]he police, who have the burden of showing that a warrantless arrest was valid, must take all reasonable steps to assure that their testimony accurately reflects what occurred."); *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983) ("Upon motion to suppress evidence garnered through a warrantless search and seizure, the burden of proof as to the reasonableness of the search rests with the prosecution."); *see also* 6 Wayne LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 11.2(b) (4th ed. 2004) (explaining that "if the police acted without a warrant the burden of proof is on the prosecution").

The Supreme Court has clearly articulated that "a seizure occurs 'when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *California v. Hodari D.*, 499 U.S. 621, 625 (1991) (quoting *Terry v. Ohio*, 392 U.S. 1, 19, n. 16 (1968)) (emphasis removed). Physical force can involve the "mere grasping or application of physical force . . . whether or not it succeeded in subduing the arrestee." *Hodari D.*, 499 U.S. at 624.

When Officer Blagrove grabbed Mr. Ray, he applied physical force. That physical force constitutes a seizure under the Fourth Amendment and is the point at which the officer was required to have a legal basis to stop Mr. Ray. *Id.* 499 U.S. at 626 ("The word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement,

even when it is ultimately unsuccessful."); *id*. at 625 ("arrest" at common law included "slightest application of physical force, despite the arrestee's escape"); *United States v. Johnson*, 365 F. Supp. 3d 89, 98 (D.D.C. 2019) (seizure began no later than the "moment of first physical contact").

The government likely argues that Mr. Ray was seized by the officers pursuant to a valid *Terry* stop. (*Terry v. Ohio*, 392 U.S. 1, 30 (1968)). A *Terry* stop, however, must be supported by a "reasonable articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Here, the officers had nothing more than a hunch. The officers did little investigation to determine whether Mr. Ray had assaulted anyone. However, every witness the officers spoke to revealed that Mr. Ray was <u>not</u> involved in the fight. Despite statements that Mr. Ray was not involved and while he was in handcuffs, the officers asked him whether he had any identification on him, which he provided. Simultaneously, officers began to search his person, asking him, "you got any firearms on you?" When the officer searched Mr. Ray, he was not under arrest, was not suspected of being armed and dangerous, and the officer had no basis to search his person.

In determining whether reasonable suspicion exists, the Court must consider the totality of the circumstances based on facts known to the officers before the seizure to assess whether "a reasonably prudent man in the circumstances would be warranted in his belief" that the suspect is breaking or is about to break the law. *United States v. Castle*, 825 F.3d 625, 635 (D.C. Cir. 2016) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). The officers in this case did not act prudently when rushing to conduct an investigatory stop before gathering more information. Here, as captured on BWC, several witnesses told the officers that Mr. Ray was <u>not</u> involved in the fight, yet the officers simultaneously began searching his person.

4

The government may claim that Mr. Ray was involved in an affray and that a *Terry* stop was necessary for further investigation. However, an affray is fighting by mutual consent of two or more people in some public place to the disturbance of others. However, if either person involved is the aggressor and attacks another who resorts to self-defense, an affray did not occur. *See*, D.C. Code § 22-1301.

The officers have never identified a complaining witness who alleged that Mr. Ray made any physical contact. Rather, the officers spoke to several witnesses who indicated that Mr. Ray acted legally, was <u>not</u> involved in an affray, and only acted to break up a fight. Despite witness statements, as Mr. Ray tried to walk away, the officers seized and searched him, going into his underwear, to recover a firearm.

The D.C. Circuit has specifically held that "[m]erely walking away, even quickly . . . , upon the arrival of the uniformed police officer [does] not provide articulable suspicion of criminal wrongdoing." *United States v. Jones*, 584 F.3d 1083, 1087 (D.C. Cir. 2009). "If an officer can detain a person . . . simply because that person exercises his right to refuse to cooperate or answer questions, his freedom to walk away is indeed no freedom at all." *Gomez v. Turner*, 672 F.2d 134, 145 (D.C. Cir. 1982).

Here, the officers had no support for the seizure of Mr. Ray. *See United States v. Montero-Camargo*, 208 F.3d 1133, 1136 (9th Cir. 2000) (whether eye contact is "suspicious" is "highly subjective" and officer's perception that suspect gave a suspicious look is of "questionable value"); *Millan-Diaz*, 975 F.2d 720, 722 (10th Cir.1992) (nervousness as basis for suspicion must be considered with caution). In *United States v. Winecoff*, No. CR 20-266 (RBW), 2021 WL 6196999 (D.D.C. Dec. 30, 2021), for example, Judge Walton held that there was *no* reasonable suspicion for a stop under far more suspicious circumstances than here. In that case,

5

the defendant: had a "nervous reaction, including [becoming] wide eye[d]" upon seeing the police; made an "abrupt about face away from the officers" and began to move in the opposite direction; quickly moved behind a van and immediately entered a SUV nearby; then "focus[ed] [ ] attention on the unmarked cruiser as it pulled parallel to the [] SUV"; and "engag[ed] in 'frantic' conversation with the [] SUV's driver." *Id.* at *7. In reaching its conclusion, the Court specifically noted that "individuals in high-crime areas disproportionately have negative encounters with the police and, therefore, have greater reason to distrust law enforcement officials and may justifiably exhibit fear when encountering police officers and attempt to avoid such encounters." *Id.* at *9.

> Judge Walton ruled:
>
> "'[N]ervous, evasive behavior is,' of course, 'a pertinent factor in determining reasonable suspicion.'" *Delaney*, 955 F.3d at 1087 (alteration in original) (quoting *Wardlow*, 528 U.S. at 124). However, "not all reactions to seeing the police are suggestive of criminal behavior." *Id*. (citing *United States v. Jones*, 584 F.3d 1083, 1087 (D.C. Cir. 2009) ("Merely walking away, even quickly ..., upon the arrival of the uniformed police officer would not provide articulable suspicion of criminal wrongdoing.")). Here, the situation is not just that "there are innocent reasons" to explain the defendant's behavior. *See Wardlow*, 528 U.S. at 125. Beyond mere "susceptib[ility to] an innocent explanation[,]" the government's evidence does not establish that the officers witnessed "conduct [that] was by itself lawful, but [that] also suggested that the [defendant]" was engaged in some kind of unlawful activity. *See id.*

*Id.* at *7.

Moreover, the BWC videos demonstrate that the government's account of what occurred is inaccurate. Mr. Ray did not punch anyone, was not involved in an affray, acted only to break up the fight, and made no furtive gestures to support a search. Rather, Mr. Ray did what he had every legal right to do—he walked away from the club, and was then seized by police officers who stopped him and placed him in handcuffs. In order to justify the seizure, the officers on the scene were required to investigate whether there was a complaining witness who claimed that

Mr. Ray assaulted them. Notwithstanding the officers' alleged observations, they had no witness statements that Mr. Ray was involved in an affray or that he assaulted any person. The government's claim that Officer Blagrove detained or placed Mr. Ray in handcuffs "to break up the fight" was not supported by reasonable articulable suspicion. Furthermore, the search of his person was not supported by probable cause.

Finally, carrying a firearm is a protected Second Amendment right, and Washington, DC has a shall issue licensing regime for concealed carry permits. Mere suspicion that a defendant is armed, without more to indicate that his possession of the firearm is unlawful, is not enough to give reasonable suspicion that the defendant is engaged in criminal activity. *See Duffie v. City of Lincoln*, 834 F.3d 877, 883 (8th Cir. 2016) ("[T]he mere report of a person with a handgun is insufficient to create reasonable suspicion."); *Northrup v. City of Toledo Police Department*, 785 F.3d 1128, 1132-33 (6th Cir. 2015) (similar); *United States v. Brown*, 925 F.3d 1150, 1154 (9th Cir. 2019) (similar and noting the shall issue licensing regime in effect); *United States v. Black*, 707 F.3d 531, 540 (4th Cir. 2013) ("[W]here a state permits individuals to openly carry firearms, the exercise of this right, without more, cannot justify an investigatory detention."). Under Supreme Court precedent, law enforcement may not arbitrarily detain an individual to ensure compliance with licensing and registration laws without particularized facts supporting an inference that the individual is unlicensed. *See Delaware v. Prouse*, 440 U.S. 648, 633 (1979) ("except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment"). Similarly, the fact that the law prevents

7

convicted felons from possessing guns, does not entitle officers to seize a suspect until a records check is run because "[b]eing a felon in possession of a firearm is not the default status." *Black*, 707 F.3d at 540. The same logic applies here. The officer's had no reasonable suspicion to believe Mr. Ray possessed a firearm, which in an of itself would not have been enough to justify a seizure.

In sum, the government has not and cannot meet its burden of demonstrating a lawful basis for the seizure of Mr. Ray. The firearm was the fruit of the unlawful seizure of Mr. Ray and must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (evidence obtained through the exploitation of a Fourth Amendment violation must be suppressed).

## CONCLUSION

Wherefore, for the foregoing reasons, and such other reasons as may be presented at a hearing in this matter, Mr. Ray respectfully submits that the use as evidence of the firearm, obtained in violation of the Fourth Amendment must be suppressed.

Respectfully submitted,

Brandi Harden, Esq.
Counsel for Jonathan Ray
Bar No. 470-706
Harden | Law, PLLC
400 7th Street NW, Suite 604
Washington, DC 20004
202.621.8268
b@hardenlawoffices.com

8

## CERTIFICATE OF SERVICE

I certify that on this 15th day of June 2026, a copy of the foregoing motion was served via ECF

on all parties of record.

_____
Brandi Harden